No. 5.—Stephen Drane and John W. Drane, ex'ors of Thomas E. Beall, dec'd, propounders, plaintiffs in error, vs. Alexander R. Beall, caveator, defendant in error.

No. 6.—Alexander R. Beall, caveator, plaintiff in error, vs. Stephen Drane and John W. Drane, ex'ors of Thomas E. Beall, propounders, defendants in error.

Upon the following clauses in the will of Thomas E. Beall, to wit:

*Item Ninth:* I reserve the tract of land situate, lying and being in the County of Columbia on the waters of Sweet Water Creek, adjoining lands belonging to the trustees of the Methodist Episcopal Camp Ground, it being the tract of land that 1 purchased from Morgan, and formerly owned by Nathan W. Stanford, containing one hundred acres, more or less, for the use and support of Nancy Goings, a free person of color, (it being the place whereon she now resides,) during her natural life, and after death the same to revert back to my estate, and that said tract of land shall not be liable for the debts or contracts of said Nancy Goings.

*Item Tenth:* I reserve the tract of land, situate lying and being in the County of Columbia, on the South side of the Wrightboro road, on the waters of the Big Kiokee Creek, containing one hundred and eighty acres, be the same more or less, adjoining lands of Benjamin Upton, Lamar and others, it being the tract of land that I purchased from Valentine Watson, for the use of James A. Watson, during his natural life, or so much thereof as he can cultivate, for his support (it being the place whereon the said Watson now resides) and at the death of the same to revert back to my estate, but said land shall not be liable for the debts or contracts of said James A. Watson.

*Item Twelfth:* I give and bequeath to William Satterwhite, *in trust*, my house servant Mariah, formerly belonging to the estate of Mary Satterwhite, to take charge of her person and effects, and that said Mariah shall be as free as the laws of the state will allow her to be, and in the event that she shall become dissatisfied with said William Satterwhite, she then shall have the right to choose any other person to act as her trustee, and she may continue to choose any other person to act as her trustee, from time to time, as she may become dissatisfied with her trustee's actings and doings.

*Item Thirteenth:* Whereas, my servant woman Mariah, formerly belonging to the estate of Mary Satterwhite, is becoming old, and is liable to severe spells of sickness, and will shortly become superannuated, I give and bequeath, in trust, to William Satterwhite, the income of my Twenty Shares in the Georgia Rail Road and Banking Company, for the use, maintenance, and support of my said servant woman Mariah, and that the said income shall be paid over to her from time to time; as the same may be received, to be disposed of as she may think proper.

*Item Fourteenth:* I give and bequeath to William Satterwhite my tract of land

known as the Harp place, containing three hundred and odd acres of land. And whereas, also, I design this tract of land as a home for my said servant Mariah, said tract so bequeathed to the said William Satterwhite shall not be liable to the debts of the said William Satterwhite until after the death of my said servant woman Mariah.

*Item Fifteenth:* I will that all my negroes shall receive their freedom and be emancipated from slavery, except those hereafter mentioned. And such negroes so freed and emancipated from slavery shall be sent to Liberia, California or any free State or Territory in the United States of America as they choose to elect.

*Item Sixteenth:* If those of my negroes freed and emancipated from slavery shall choose to go to Liberia, then in that case, I will to the Colonization Society the sum of fifteen hundred dollars, to be expended in transporting them there, and if they choose to go to California, or any other free State or Territory in the United States of America, then and in that case, their passage shall be paid to the place they shall elect, by my executors hereafter named.

*Item Seventeenth:* It is my will and desire that those negroes that I have given their freedom and emancipated, shall be kept on my plantation for the term of four years after my death, for the purpose of raising funds, and after defraying all expenses on the plantation during those four years, then the net proceeds shall be equally divided among those of my negroes freed and emancipated from slavery, share and share alike, agreeable to their situation, some being old, and some being women and children, will require more, whilst some are young, can go to work immediately and make their support; and, this division is left to my executors, hereafter named, to exercise a proper and equitable division between them all. And it is my will and desire that my executors, out of the above named funds, shall furnish each of the negroes above eight years of age, two good blankets each; and the whole of the negroes freed and emancipated from slavery shall receive two good suits of clothes, a hat, a pair of shoes; and those of my negroes freed and emancipated from slavery, under eight years of age, one good blanket each.

*Item Eighteenth:* If I should depart this life whilst I have a crop making on hand, then in that case that crop be taken and applied as before specified, and the year counted one of the four years specified for those of my negroes freed and emancipated from slavery, are to remain on my said plantation.

*Item Nineteenth:* It is my will and desire, that if any of my negroes freed and emancipated from slavery, shall elect to go to Liberia or California, then in that case my executors, hereafter named, shall see them on board the vessel, and shall pay over the money to my negroes so emancipated and freed from slavery, only on board the vessel, and that in the presence of the captain, commander, or owner of said vessel, and a certificate of the captain, commander, or owner of the vessel, that they saw my executors, hereafter named, pay over the money to the negroes so emancipated and freed from slavery; and also, the captain, commander, or owner of said vessel shall furnish my executors with a list of the negroes' names, and the number of the negroes so freed and emancipated from slavery, as this shall be necessary for my executors to tender as a voucher in the final settlement of my estate.

Drane, ex'r. vs. Beall, cav'r. and Beall, cav'r. vs. Drane, ex'r.

*Item Twentieth:* And, if my negroes so freed and emancipated from slavery, shall elect to go to any free State or Territory, other than the State of California, then in that case it is my will and desire that my executors shall pay their expenses to such free State or Territory out of the funds of my estate, and in the event that my negroes so' freed and emancipated from slavery shall not elect to go to Liberia, then in that case the sum of fifteen hundred dollars, placed at the disposal of the Colonization Society, shall be withdrawn and placed at the disposal of my executors hereafter named. And, it is further my will and desire, that the expenses of my executors, or their agent, shall be paid out of my estate, and the additional sum of one dollar per day, whilst going to and returning from the place where my negroes so freed and emancipated from slavery shall elect as their future place of residence, in any of the free States or Territories of the United States of America, other than the State of California.

*Item Twenty-fourth:* Whereas, it will not be necessary to keep the whole of my personal property, such as stock, farming utensils, corn, fodder, wheat, and other articles for the purpose of stocking for four years, as expressed in a former clause of my will, it is my will and desire that a sufficient amount shall be kept on the plantation, of the articles above named, for the purpose of stocking my plantation, and that the balance shall be sold as soon after my death as the law or circumstances will admit.

*Item Twenty-fifth:* It is my will and desire, that after my estate shall have been settled up, and all bequests paid out, agreeable to the provisions of this my will, the balance of the money, or cash remaining in the hands of my executors, hereafter named, shall be invested in an education fund, for the purpose of educating poor orphan children, citizens of the county of Columbia; and if there should not be poor orphan children enough educated out of the annual income of said education fund, to absorb the whole of said annual income of said education fund then the surplus shall be appropriated to the education of the poor children of the county of Columbia. And if any of the annual income of said education fund shall remain on hand at the end of each or any year, said amount so remaining on hand shall be added to the principal, and to remain as the principal. *Held*

[1.] That by the 14th clause of the will, Satterwhite took an absolute fee in the tract of land therein described, subject to the incumbrance of allowing the negro woman Mariah to have a home on it, during her life ; there being nothing upon the face of the will itself, nor from any extraneous proof, to show any complicity on the part of the said Satterwhite, in any illegal purpose, touching the emancipation of said slave.

[2.] That the 15th item of the will is inoperative, because by it the testator endeavored unlawfully to emancipate and set free in this State all of his remaining slaves; and that the 16th, 17th, 18th, 19th, 20th and 24th items, are also, void, because they were intended to contribute to and do constitute a part of the scheme, by which the testator attempted illegally to free his negroes.

[3.] That there is nothing in the 9th, 10th and 25th clauses of the will, so vague, obscure and indefinite, as to justify the Superior Court on appeal from the Court of Ordinary to pronounce these items a nullity ; and that the intricate

doctrines involved in them could only be properly considered by the Court, whose peculiar function it is to construe wills and direct their execution.

Caveat, in Columbia Superior Court. Tried before Holt, Judge. September Term, 1856. Appeal from Ordinary.

Ordered by consent of counsel, that the above cases be consolidated and argued together.

The controversy in these cases arose upon admission to probate in solemn form, of an instrument in writing purporting to be the last will and testament of Thomas E. Beall, deceased. The instrument is as follows, viz :

Georgia, Columbia county. In the name of God—Amen. I. Thomas E. Beall, of the County and State aforesaid, being possessed of a sound and disposing mind and memory, do make, ordain and appoint this instrument in writing to be my last will and testament, hereby revoking all former wills by me made.

*Item First :* It is my will and desire that my just debts shall be paid out of my estate.

*Item Second :* I give and bequeath to my brother, Alexander R. Beall the sum of five hundred dollars, to be taken out of the amount of his indebtedness to me.

*Item Third :* Whereas, my brother Alexander R. Beall is indebted to me in a considerable amount, now it is my will and desire that he shall not be forced to pay said amount during his natural life, but the same shall be renewed from time to time, and kept within the statute of limitation, and that said amount shall not be collected out of his estate until after his death.

*Item Fourth :* I give and bequeath to my two cousins, Emily Frances Ellis, and Nancy Brook Ellis, each an amount out of my estate sufficient to purchase for each of them one negro girl a piece, from fourteen to sixteen years of age, and if not done in my life time, for my executors to carry out this my bequest; but if done in my life time, this clause or item in

## SAVANNAH, JANUARY TERM, 1857. 25

Drane, ex'r. vs. Beall, cav'r. and Beall, cav'r. vs. Drane, ex'r.

my will to be null and void. And said negro girls so given shall be exclusively the property of them and their children, and not subject to the debts of any husband they may have.

*Item Fifth:* I give and bequeath to Eliza Bell, alias Eliza Boatright, and Lucinda Bell, alias Lucinda Wiley, and their children, the tract of land whereon they now reside, adjoining lands of John C. Smith, Francis T. Allen, Washington W. Stone, estate of Robert Shanklin, deceased, and Luke Langston, on the waters of Germany's Creek, Columbia County, the same not to be subject to the debts of their present husbands, or any future husbands they may have.

*Item Sixth:* I give and bequeath to John Booker Sutherland, William Anderson Sutherland, Augustus Cosby Sutherland, James Madison Sutherland, sons of James Sutherland, deceased, the sum of two hundred dollars each, to be paid to them when they come of age, or to their guardians. Said bequest to be paid at the earliest convenience of my executors hereafter named.

*Item Seventh:* I give and bequeath to Mrs. Margaret Darsey, the sum of one hundred dollars, to be paid to her at the earliest convenience of my executors hereafter named.

*Item Eighth:* I give and bequeath to Jane Young, daughter of John T. Young, the sum of two hundred dollars, to be given to her or her guardian, at the earliest convenience of my executors, hereafter named.

*Item Ninth:* I reserve the tract of land situate, lying and being in the County of Columbia, on the waters of Sweet Water Creek, adjoining lands belonging to the trustees of the Methodist Episcopal Camp Ground, it being the tract of land that I purchased from Morgan, and formerly owned by Nathan W. Stanford, containing one hundred acres, more or less, for the use and support of Nancy Goings, a free person of color, (it being the place whereon she now resides,) during her natural life, and after death the same to revert back to my estate, and that said tract of land shall not be liable for the debts or contracts of said Nancy Goings.

*Item Tenth :* I reserve the tract of land, situate lying and being in the County of Columbia, on the South side of the Wrightboro road, on the waters of the Big Kiokee Creek, containing one hundred and eighty acres, be the same more or less, adjoining lands of Benjamin Upton, Lamar and others, it being the tract of land that I purchased from Valentine Watson, for the use of James A. Watson, during his natural life, or so much thereof as he can cultivate, for his support (it being the place whereon the said Watson now resides) and at the death of the same to revert back to my estate, but said land shall not be liable for the debts or contracts of said James A. Watson.

*Item Eleventh :* I give and bequeath to William Satterwhite, one bed, bedstead and furniture, one horse and a mule, or two mules, as he may choose, and two cows and calves.

*Item Twelfth :* I give and bequeath to William Satterwhite, *in trust,* my house servant Mariah, formerly belonging to the estate of Mary Satterwhite, to take charge of her person and effects, and that said Mariah shall be as free as the laws of the State will allow her to be, and in the event that she shall become dissatisfied with said William Satterwhite, she then shall have the right to choose any other person to act as her trustee, and she may continue to choose any other person to act as her trustee, from time to time, as she may become dissatisfied with her trustee's actings and doings.

*Item Thirteenth :* Whereas, my servant woman Mariah, formerly belonging to the estate of Mary Satterwhite, is becoming old, and is liable to severe spells of sickness, and will shortly become superannuated, I give and bequeath, in trust, to William Satterwhite, the income of my twenty shares in the Georgia Rail Road and Banking Company, for the use, maintenance, and support of my said servant woman Mariah, and that the said income shall be paid over to her from time to time, as the same may be received, to be disposed of as she may think proper.

*Item Fourteenth :* I give and bequeath to William Satterwhite my tract of land known as the Harp place, containing three hundred and odd acres of land, originally granted to Alexander Johnson, adjoining lands of Dougherty, Ballard and Hamilton; also a portion of the Telfair tract, a portion of the Dougherty tract, and a portion of the tract of land originally granted to John Wright, beginning at Napier's pine stump corner on the Johnson or Harp line, and running thence to a pine corner on the Telfair line, near the old School-house place, then running a line so as to leave the gate nearest to the woods leading to the forks of the Columbia and Cobham roads, fifty yards North-east of the corner of this line, thence a line five chains parallel with the Cobham road, thence a right line to the ford on the Harp branch, where the Columbia road crosses the same, thence up said branch until it shall intersect with the Harp line, or the line of the tract of land originally granted to Alexander Johnson. And, whereas also, I design this tract of land as a home for my said servant Mariah, said tract, so bequeathed to the said William Satterwhite, shall not be liable to the debts of the said William Satterwhite until after the death of my said servant woman Mariah.

*Item Fifteenth :* I will that all my negroes shall receive their freedom and be emancipated from slavery, except those hereafter mentioned. And such negroes so freed and emancipated from slavery shall be sent to Liberia, California, or any free State or Territory in the United States of America, as they choose to elect.

*Item Sixteenth :* If those of my negroes freed and emancipated from slavery shall choose to go to Liberia, then in that case, I will to the Colonization Society the sum of fifteen hundred dollars, to be expended in transporting them there; and if they choose to go to California, or any other free State or Territory in the United States of America, then and in that case, their passage shall be paid to the place they shall elect, by my executors hereafter named.

*Item Seventeenth:* It is my will and desire that those ne-groes that I have given their freedom and emancipated, shall be kept on my plantation for the term of four years after my death, for the purpose of raising funds, and after defraying all expenses on the plantation during those four years, then the net proceeds shall be equally divided among those of my negroes freed and emancipated from slavery, share and share alike, agreeable to their situation, some being old, and some being women and children, will require more, whilst some are young, can go to work immediately and make their support; and, this division is left to my executors, hereafter named, to exercise a proper and equitable division between them all. And it is my will and desire that my executors, out of the above named funds, shall furnish each of the ne-groes above eight years of age, two good blankets each; and the whole of the negroes freed and emancipated from slavery shall receive two good suits of clothes, a hat, a pair of shoes; and those of my negroes freed and emancipated from slavery, under eight years of age, one good blanket each.

*Item Eighteenth:* If I should depart this life whilst I have a crop making on hand, then in that case that crop be taken and applied as before specified, and the year counted one of the four years specified for those of my negroes freed and emancipated from slavery, are to remain on my said planta-tion.

*Item Nineteenth:* It is my will and desire, that if any of my negroes freed and emancipated from slavery, shall elect to go to Liberia or California, then in that case my executors, hereafter named, shall see them on board the vessel, and shall pay over the money to my negroes so emancipated and freed from slavery, only on board the vessel, and that in the pre-sence of the captain, commander, or owner of said vessel, and a certificate of the captain, commander, or owner of the vessel, that they saw my executors, hereafter named, pay over the money to the negroes so emancipated and freed from slavery; and also, the captain, commander, or owner of said

vessel shall furnish my executors with a list of the negroes' names, and the number of the negroes so freed and emancipated from slavery, as this shall be necessary for my executors to tender as a voucher in the final settlement of my estate.

*Item Twentieth :* And, if my negroes so freed and emancipated from slavery, shall elect to go to any free State or Territory, other than the State of California, then in that case it is my will and desire that my executors shall pay their expenses to such free State or Territory out of the funds of my estate, and in the event that my negroes so freed and emancipated from slavery shall not elect to go to Liberia, then in that case the sum of fifteen hundred dollars, placed at the disposal of the Colonization Society, shall be withdrawn and placed at the disposal of my executors hereafter named. And, it is further my will and desire, that the expenses of my executors, or their agent, shall be paid out of my estate, and the additional sum of one dollar per day, whilst going to and returning from the place where my negroes so freed and emancipated from slavery shall elect as their future place of residence, in any of the free States or Territories of the United States of America, other than the State of California.

*Item Twenty-first :* I give and bequeath unto Mrs. Eliza Pounds, wife of Robert S. Pounds, Lewis, a negro man slave that I purchased from James Pounds, to her during her natural life, and after her death to go and become the property of her daughter, Mary Pounds, and the negro man slave, Lewis, shall not be subject to the debts or contracts of her said husband, Robert S. Pounds. And the said negro man slave, when he shall become the property of Mary Pounds, shall be vested in her and her children, and shall not be subject to the debts or contracts of any husband she may have.

*Item Twenty-second :* I give and bequeath to my executors, hereafter named, the sum of two thousand five hundred dollars, in lieu of commissions for closing and settling up my estate.

*Item Twenty-third:* It is my will and desire, that the whole of the balance of my estate shall be sold by my executors, hereafter named, either at private or public sale, as will best promote the interest of my estate. And in making the sale of my land, it is my will and desire, that my lands may be divided into lots, and sold, if it will best promote the interest of my estate, but no division shall be made that will affect the sale of the balance remaining on hand; and when a division of my plantation or any tract of land that I own shall take place to effect a sale, it is my desire that the whole of my plantation, or any tract of land that I own, shall be disposed of by sale at the same time.

*Item Twenty-fourth:* Whereas, it will not be necessary to keep the whole of my personal property, such as stock, farming utensils, corn, fodder, wheat, and other articles for the purpose of stocking for four years, as expressed in a former clause of my will, it is my will and desire that a sufficient amount shall be kept on the plantation, of the articles above named, for the purpose of stocking my plantation, and that the balance shall be sold as soon after my death as the law or circumstances will admit.

*Item Twenty-fifth:* It is my will and desire, that after my estate shall have been settled up, and all bequests paid out, agreeable to the provisions of this my will, the balance of the money, or cash, remaining in the hands of my executors, hereafter named, shall be invested in an education fund, for the purpose of educating poor orphan children, citizens of the county of Columbia; and if there should not be poor orphan children enough educated out of the annual income of said education fund, to absorb the whole of said annual income of said education fund, then the surplus shall be appropriated to the education of the poor children of the county of Columbia. And if any of the annual income of said education fund shall remain on hand at the end of each or any year, said amount so remaing on hand shall be added to the principal, and to remain as the principal.

*Item Twenty-sixth:* It is my will and desire, that such amount as shall be set apart for the purpose of an education fund, as expressed in a former clause of my will, shall be invested in bank stock, state stock, or scrip, from time to time, as circumstances may require, but no innovation upon the principal shall be made; only the net annual income shall be appropriated, as aforesaid. And whereas, I have selected the Justices of the Inferior Court of the county of Columbia, as being the persons most suitable to select some person or persons to take charge of said education fund, and its annual income, for the purpose of disbursing the same, agreeable to the former clause of my will, said Justices of the Inferior Court shall exact, and take a bond, with good and sufficient security, from the person or persons so appointed to take charge of said education fund, and its annual income, for the faithful performance of the duties incumbent on him or them, in the management of said education fund, and its annual income, agreeable to my will and desire, heretofore expressed in a former clause of this my will. And in the event the Justices of the Inferior Court of said county of Columbia shall not take good and sufficient security of and from the person or persons so appointed by them, then, and in that case, the said Justices of the Inferior Court of the county of Columbia shall be held and deemed liable and responsible for the whole of said education fund and its annual income. And said Justices shall lay themselves liable to be proceeded against in an action at law or equity by the citizens of the county of Columbia for the recovery of the same. And in the event that no person or persons can be found to take charge of said education fund, and its annual income, and disburse the same, and give bond and security as above specified, then in that case the Justices of the Inferior Court shall take charge of the said education fund and its annual income, and invest the same agreeable to the provisions of this my will, and proceed annually to disburse the annual income, agreeable to the provisions above specified,

and the person or persons disbursing the same shall take and receive for his or their services, one per cent. for disbursing said annual income.

*Item Twenty-seventh :* I nominate my friends, Stephen Drane and John W. Drane, my executors to carry into effect this my last will and testament.

In testimony whereof, I have hereunto set my hand, and affixed my seal, this, the thirteenth day of June, 1853.

THOMAS E. BEALL, [<i>L. S.</i>]

*Signed, Sealed, and Acknowledged in the presence of each of us, and that we subscribed the same at the request of the testator.*

Signed,          W. L. Blunt,
                 H. R. Casey,
                 Nath'l Bailey, *J. I. C.*

This instrument had been admitted to probate in common form by the Ordinary of Columbia County, and the executors being cited by Alexander R. Beall, the next of kin, to prove the same in solemn form, appeared at the April Term, 1856, of the Court of Ordinary of said county, and propounded said instrument for probate. To which, said next of kin, by his counsel Ebenezer Starnes, entered the following caveat, viz:

And now, to wit: at April Term, 1856, of the Court of Ordinary of Columbia County, comes Alexander R. Beall, next of kin, to the said Thomas E. Beall, deceased, and by his Attorney at Law, Ebenezer Starnes, caveats the instrument propounded as the last will and testament of the said Thomas E., and for his objections says, that the same is not the true last will and testament of the said Thomas E. Beall, because:

1st. That by the said instrument, the said Thomas E., in the 12th and 15th clauses thereof, endeavored unlawfully to manumit and set free certain of the slaves owned and possessed by him at the time of his death, and therefore the

whole of the instrument is void and of none effect, as a last will and testament.

2d. If the whole instrument is not void and invalid for the reasons assigned, yet the ninth (9th) clause thereof is so, because it was sought thereby to convey the life estate in a tract of land, lying in said county, and State, to Nancy Goings, a a free person of color. And because of such uncertainty and indefiniteness in the language, as renders it impossible to carry the same into effect.

3d. The tenth (10th) clause is void and inoperative, because therein the said Thomas E. uses language so uncertain and indefinite in its terms, that the same cannot be carried into effect.

4th. The twelfth (12th) clause of said instrument is void, because by it the said Thomas E. endeavored unlawfully to give his slave Mariah into a state of freedom, or quasi-freedom, within the State. And the thirteenth (13th) and fourteenth (14th) clauses are also void and invalid, because in aid of and part of the scheme unlawfully to emancipate Mariah.

5th. The fifteenth (15th) clause of said instrument is also inoperative as the will of Thomas E. Beall, because by it he endeavored unlawfully to manumit all but one of his slaves. And the 16th, 17th, 18th, 19th, 20th, and 24th clauses are null and void, because that they contribute to and constitute a part of the unlawful scheme by which the said Thomas E. endeavored to emancipate his slaves; and because that if the property conveyed by these clauses cannot go in aid of this scheme, Thomas E. Beall died intestate as to this property.

6th. The twenty-third, (23d) twenty-fifth, (25th) and twenty-sixth (26th) clauses of said will are void and inoperative, because they dispose of a balance or residue of the property of said deceased after the said slaves shall have been freed, and the real estate funds, &c., to be applied and appropriated in aid of their emancipation shall have been so used. Whereas

no such balance or residue can be ascertained, for that, inasmuch as the said slaves cannot be so emancipated, and the property designed by the testator to be so disposed of cannot be so applied, there is no method left by which said balance or residue can be determined. And the said 25th clause is void, because of uncertainty as to the objects of the bequest, the same being "for the purpose of educating poor orphan children, citizens of the county of Columbia ;" or "poor children of the County of Columbia."

7th. And further, that the whole and every part of said instrument is null and void for want of due and proper execution, &c.

All of which the said next of kin is ready to verify, and whereof he prays judgment, &c.

EBENEZER STARNES,
Attorney for Caveator.

By consent, there was an appeal to the Superior Court. There being no questions of fact involved, the case was submitted to the decision of the presiding Judge, who after argument, pronounced the following judgment:

"Columbia Superior Court.

In the matter of the will of Thomas E. Beall.

This will being offered for probate in the Court of Ordinary, was met by a caveat from Alexander R. Beall, next of kin, and by appeal was brought to this Court. When called for trial, there appearing to be no question of fact involved in the case, it was by consent withdrawn from the Jury, and referred to the decision of the Court upon the questions of law raised by the caveat.

Although the grounds of caveat are numerous, the objections to the will may be resolved into two:

First, That of illegality: the purposes, designs, and attempts of the will being in opposition to the laws and settled policy of the State in regard to emancipation of slaves.

Drane, ex'r. vs. Beall, cav'r. and Beall, cav'r. vs. Drane, ex'r.

Second, Uncertainty and indefiniteness in the language of the will, and in the purposes and intentions of the testator.

I have looked carefully into this will to see how far it is liable to these objections, and find that in the 12th clause there is a direct attempt to manumit a slave in the State, and that the 13th and 14th clauses are obnoxious to the same objection, having for their object the same illegal purpose. These clauses of the will are, therefore, declared to be null. By the 15th clause the testator has manumitted all the rest of his slaves but one. It is plain, however, that this manumission is to take effect out of the State. He has taken special care to direct their removal, and to provide for the expense of it, and for a temporary support in their new home. During their continuance in the State, which is not an unreasonable length of time to prepare for the important change designed in their condition, the state of slavery is strictly preserved. They have neither the power over their own time, nor over the proceeds of their labor. The right of this testamentary disposition of slaves by their owners is as unquestionable as the right to remove them while the owner lives. Neither the 15th clause, therefore, nor those that follow it having the same design and intention, are subject to the objection for which the 12th is declared null. That an illegal clause will not vitiate a whole will is settled by the highest judicial authority of the State.

As to the objection of uncertainty and indefiniteness, it is a matter more properly to be considered by the Court whose peculiar duty it is to interpret wills, and direct their execution according to the intention of testators. I find nothing in this will so vague, indefinite, and uncertain, that it should therefore be pronounced null and void. I decide nothing as to property mentioned in clauses declared null.

It is therefore ordered, that the will of Thomas E. Beall be sent back to the Court of Ordinary, with instructions to admit the same to probate and record, except the 12th, 13th and 14th clauses thereof, which have been declared null, and

Drane, ex'r. vs. Beall, cav'r. and Beall, cav'r. vs. Drane, ex'r.

that the clerk of Columbia Superior Court enter this order upon the minutes.

WILLIAM W. HOLT, Judge, &c.

Chambers, 18th December, 1856."

To all of which decision and judgment sustaining the said instrument, or any of the clauses thereof, as the last will and testament of Thomas E. Beall, the caveator, by his counsel excepts, and assigning error, sayeth:

1st. That the Court erred in overruling the ground, that the whole instrument was void because of an attempt by the said Thomas E. Beall thereby unlawfully to emancipate his slaves.

2d. That the Court erred in deciding that the 9th clause thereof was not void for the reasons stated.

3d. In holding that the 10th clause was not void for obscurity.

4th. In holding that the 15th clause was not void, and the testator did not endeavor unlawfully to manumit the negro slaves referred to in said clause.

5th. In not deciding that the 16th, 17th, 18th, 19th, 20th and 24th clauses were null and void, as constituting a part of the scheme by which the testator endeavored unlawfully to emancipate his slaves.

6th. In refusing to decide that the 25th clause was void for the reasons stated.

7th. In not deciding that the 23d, 24th and 25th clauses are void, if the others objected to are so, because dependent on them.

8th. In declining to decide, that if any of the clauses in said will are null and void, the property passes to the next of kin, and that the bequest of a residue in the 25th clause, is the bequest of a particular fund, and not of the whole estate.

And, to so much of said judgment, above quoted, as respects the fourteenth clause of said will, and to no more, the

propounders, by their counsel Charles J. Jenkins, except, and assigning error say :

1st. That the Court erred in holding that said fourteenth (14th) clause had for its object the manumission of a slave in the State, or any like illegal purpose.

2d. That the Court erred in adjudging that by reason of such illegal objects or purposes said fourteenth clause was null.

3d. That the Court erred in adjudging that said fourteenth (14th) clause be not admitted to probate and record.

CHARLES J. JENKINS, for ex'ors of Beall.

EBENEZER STARNES, for caveator.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The Circuit Court in deciding this case, considered that the numerous grounds of objection to the will, taken in the caveat, might be reduced to two : First, that of illegality : the purposes, designs and attempts of the will, being in opposition to the laws and settled policy of the State in regard to emancipation of slaves. And secondly, uncertainty and indefiniteness in the language of the will, and in the purposes and intention of the testator. And viewing the 12th clause as a direct attempt to manumit the slave Mariah in the State, and that the 13th and 14th clauses, were obnoxious to the same objection, having for their object the same illegal purpose; the Court below declared these clauses to be null and void.

By the 15th item of the will, it was admitted, that the testator had manumitted all the rest of his slaves but one. The Judge said, it was plain, however, that this manumission was to take effect out of the State. That the testator had taken special care to direct their removal, and to provide for the expense of it; and for a temporary support in their new home. That during their continuance in the State, which

was not for an unreasonable length of time to prepare for
the important change designed in their condition, the state of
slavery is strictly preserved.   They have neither the power
over their own time, nor over the proceeds of their labor.
That the right of this testamentary disposition of slaves by
their owners, is as unquestionable as the right to remove
them while the owner lives.   That neither the 15th clause,
therefore, nor those that follow it, having the same design
and intention, are subject to the objection for which the 12th
is declared null.   That an illegal clause will not vitiate a
whole will, was already settled by the Supreme Court.

As to the objection of uncertainty and indefiniteness, as
applicable particularly to the 9th, 10th and 25th clauses of
the will, the Judge held, that it was a matter more proper-
ly to be considered by the Court, whose peculiar duty it is
to interpret wills, and direct their execution, according to the
intention of testators; and that there was nothing in this will
so vague, indefinite and uncertain, that it should therefore
be pronounced invalid.   Nothing was decided as to the pro-
perty mentioned in the clauses declared null.

As no exception was taken to the judgment of the Court,
declaring the 12th and 13th clauses of the will void, because
they attempted to manumit the slave Mariah within the
State, it is, of course, not open for re-examination before this
Court.   If so, we might feel some hesitation in affirming the
construction put upon this portion of the will.   It seems
from the recitals in the will, and there is no extraneous tes-
timony in the case, that this woman formerly belonged to the
estate of one Mary Satterwhite; that she was becoming old,
and was liable to severe spells of sickness, and would shortly
be superannuated.   The testator was morally, if not legally
bound for her maintenance and support.   Feeling this obli-
gation, he wills her in trust to William Satterwhite, to take
charge of her person and effects, with the request that she
may be *as free as the laws of the State will allow her to be.*
He then sets apart a fund for her use; and then follows the

14th item of the will, which we are called upon to interpret. It is as follows :

[1.] "I give and bequeath to William Satterwhite, my tract of land, known as the Harp place, &c. (describing it minutely by metes and bounds,) containing three hundred and odd acres" ; and then adds: "and whereas, also, I design this tract of land as a home for my said servant Mariah, said tract, so bequeathed to the said William Satterwhite, shall not be liable to the debts of the said William Satterwhite, until after the death of my said servant Mariah."

Were I satisfied that the object of the testator was to confer freedom or quasi-freedom upon this woman, and not to make a humane provision for a faithful servant who was sickly and superannuated during the remnant of her days, she having spent the prime of her life in his service, I might find some embarrassment in dissenting from the opinion of the Circuit Judge ; for the 4th section of the Act of 1818, is exceedingly comprehensive, it declares that :

"All and every will and testament, whether by way of trust, or otherwise, contract, agreement or stipulation, or other instrument in writing, made and executed *for the purpose* of effecting or endeavoring to effect the manumission of any slave or slaves, either directly, by conferring or attempting to confer freedom on such slave or slaves; indirectly or virtually, by allowing and securing or attempting to allow and secure, to such slave or slaves, the right or privilege of working for his, her or themselves, free from the control of the master or owner of such slave or slaves; or of enjoying the profits of his, her or their labor or skill ; shall be and the same are hereby declared to be utterly null and void."     *Cobb* 991.

I repeat, the will upon its face, avows a different purpose ; and it is a question of intention, and if there be no external proof, that intention must be gathered from the instrument itself. If that be legitimate and the means of accomplishing it be not forbidden, the will can and should be executed.

Did William Satterwhite accept an illegal trust, under this

14th clause, for the purpose of aiding and abetting the testa-tor in a project not only prohibited, but one made highly pe-nal by the Statute? *Ib.*

By the will, Satterwhite took an absolute fee in the land, subject to the incumbrance only of allowing the woman Ma-riah to live on it during her life. Suppose the object of Beall to have been illegal and Satterwhite did not participate in it, is his title forfeited? We apprehend not. If the provision in the will be good, he takes the property *cum onere :* If bad, it is his absolutely.

We wish it distinctly understood, that our judgment upon this branch of the case is restricted entirely to the point, as presented by the will itself.

[2.] Is the 15th clause of Thomas E. Beall's will inopera-tive, because, by it he endeavored unlawfully to manumit all but one of his slaves ? And are the 16th, 17th, 18th, 19th, 20th and 24th clauses void, because that they contribute to, and constitute a part of, the unlawful scheme by which the said testator endeavored to emancipate his slaves?

It is necessary that these clauses in the will be transcribed, they are as follows:

"*Item Fifteenth :* I will that all my negroes shall receive their freedom and be emancipated from slavery, except those hereafter mentioned. And such negroes so freed and eman-cipated from slavery shall be sent to Liberia, California, or any free State or Territory in the United States of America, as they choose to elect."

"*Item Sixteenth :* If those of my negroes freed and eman-cipated from slavery shall choose to go to Liberia, then in that case, I will to the Colonization Society the sum of fifteen hundred dollars, to be expended in transporting them there ; and if they choose to go to California, or any other free State or Territory in the United States of America, then and in that case, their passage shall be paid to the place they shall elect, by my executors, hereafter named."

"*Item Seventeenth :* It is my will and desire that those ne-

groes that I have given their freedom and emancipated, shall be kept on my plantation for the term of four years after my death, for the purpose of raising funds, and after defraying all expenses on the plantation during those four years, then the net proceeds shall be equally divided among those of my negroes freed and emancipated from slavery, share and share alike, agreeable to their situation, some being old, and some being women and children, will require more, whilst some are young, can go to work immediately and make their support; and this division is left to my executors, hereafter named, to exercise a proper and equitable division between them all. And it is my will and desire that my executors, out of the above named funds, shall furnish each of the negroes above eight years of age, two good blankets each; and the whole of the negroes freed and emancipated from slavery shall receive two good suits of clothes, a hat, a pair of shoes; and those of my negroes freed and emancipated from slavery, under eight years of age, one good blanket each."

"*Item Eighteenth :* If I should depart this life whilst I have a crop making on hand, then in that case that crop be taken and applied as before specified, and the year counted one of the four years specified for those of my negroes freed and emancipated from slavery, are to remain on my said plantation."

"*Item Nineteenth:* It is my will and desire, that if any of my negroes freed and emancipated from slavery, shall elect to go to Liberia or California, then in that case my executors, hereafter named, shall see them on board the vessel, and shall pay over the money to my negroes so emancipated and freed from slavery, only on board the vessel, and that in the presence of the captain, commander, or owner of said vessel, and a certificate of the captain, commander, or owner of the vessel, that they saw my executors, hereafter named, pay over the money to the negroes so emancipated and freed from slavery; and also, the captain, commander, or owner of said vessel shall furnish my executors with a list of the negroes'

names, and the number of the negroes so freed and emancipated from slavery, as this shall be necessary for my executors to tender as a voucher in the final settlement of my estate."

"*Item Twentieth:* And if my negroes so freed and emancipated from slavery, shall elect to go to any free State or Territory, other than the State of California, then in that case it is my will and desire that my executors shall pay their expenses to such free State or Territory out of the funds of my estate; and in the event that my negroes so freed and emancipated from slavery shall not elect to go to Liberia, then in that case the sum of fifteen hundred dollars, placed at the disposal of the Colonization Society, shall be withdrawn and placed at the disposal of my executors, hereinafter named. And, it is further my will and desire, that the expenses of my executors, or their agent, shall be paid out of my estate, and the additional sum of one dollar per day whilst going to and returning from the place where my negroes so freed and emancipated from slavery shall elect as their future place of residence, in any of the free States or Territories of the United States of America, other than the State of California."

"*Item Twenty-fourth:* Whereas, it will not be necessary to keep the whole of my personal property, such as stock, farming utensils, corn, fodder, wheat, and other articles, for the purpose of stocking for four years, as expressed in a former clause of my will, it is my will and desire that a sufficient amount shall be kept on the plantation, of the articles above named, for the purpose of stocking my plantation, and that the balance shall be sold as soon after my death as the law or circumstances will admit."

The only question upon these seven clauses of the will is, was the manumission of the slaves to take effect at the death of the testator, and consequently within the State? Does the will, in other words, contemplate their removal, not to *acquire,* but to *enjoy* the freedom which it supposes to be conferred by virtue of the declared wishes of the testator?

It seems to us, that there can be but one answer given

Drane, ex'r. vs. Beall, cav'r. and Beall, cav'r. vs. Drane, ex'r.

to these questions. The words of the will are too plain to admit of doubt or difficulty. That the emancipation bequeathed by the will, was intended to be *enjoyed* in Liberia, California, or some other free State or Territory, will be readily conceded: but that it was to take effect in Georgia, at the death of the testator, is clear, beyond cavil; and whether you construe the 15th item *per se*, or as explained by the context, the same inference is irresistible.

It never occurred to the testator, for a moment, that it was wrong to give his slaves present freedom by his will, provided they were to be carried out of the State, within what he supposed to be a reasonable time, to enjoy it. He did not intend to violate the law. But the mistake he committed was in supposing that a gift of freedom, *in præsenti*, to his slaves, to vest at his death, although it be but for a moment of time, was not unlawful. In whom was the title of these slaves, from the death of the testator to the time contemplated for their removal? Not in themselves, for they were incapable of taking; not in the Executors, although they were clothed with a *quasi* trust or agency respecting them. The title vested, *eo-instanti*, at the death of Beall, in his personal representatives, in trust for the residuary legatees or distributees, and it is not in the power of the Courts to divest it. For myself, I entertain not a doubt but that a testator may by his will direct his Executor to remove his negroes to some other country, where they may acquire, as well as enjoy their freedom, and that the performance of such trust, will be permitted, if not enforced against such Executor; I am equally well satisfied, that the bequest of freedom to slaves in this case is void, as it was to take effect in this State, and the slaves are made the legatees of their own freedom, a boon they are incapable of taking.

This being the conclusion of the Court, whether looking at the 15th *verse* alone, or the "whole chapter of emancipation," as it has been called, we do not find it necessary to dwell at length upon the 17th item, directing the slaves, to

whom the testator had given their freedom, to be kept on his plantation for four years after his death, to provide for an outfit.

Was this scheme lawful in other respects, we are not prepared to say, how far its validity might not be affected by this arrangement. It is said that a reasonable time must be allowed, because some time must elapse, longer or shorter, according to circumstances, despite the testator, as in case of caveat, suit in chancery, possible insolvency of the estate, &c., and this is certainly true. But the time required for the meeting and overcoming these and other unforeseen contingencies, is one thing; and for the testator to direct by his will, that they shall be kept within the State for a specified period, four, six or ten years, to accumulate funds to defray the expenses of their transportation, and support them in their new home, is quite a different thing. This point has never been distinctly made in any previous case. By the act of 1818, already quoted, every will, deed, whether of trust or otherwise, contract, agreement or stipulation, or other instrument in writing, or by parol, made and executed for the purpose of effecting or endeavoring to effect the manumission of any slave or slaves, either directly, by conferring or attempting to confer freedom on such slave or slaves, or indirectly and virtually, by allowing or attempting to secure to them the privilege of enjoying the profits of their labor and skill, shall be utterly null and void. *Cobb* 991.

Suppose it be true then, that the hand of the Executor is upon these slaves, as the hand of the master, until they leave Georgia, and that they are subject to his control, still can it be denied, that during this four years, these slaves are working for themselves? That they are enjoying the profits of their own skill and labor?

In our judgment, principle and policy, not to say positive law, are opposed to this whole scheme of emancipation.

[3.] Finally, it is insisted that the 9th, 10th and 25th clauses of the will, are void, because of their absurdity and indefi-

niteness, as to the donees and the thing given, as well as the method of executing the bequest of the will.  Our opinion is, that the Circuit Court very properly held that there was nothing in this portion of the will, so vague as to justify the Superior Court, on appeal from the Ordinary merely, to pronounce them a nullity.  And that it was a matter more properly to be considered by the Court, whose peculiar duty it is to construe wills, and direct their execution.

It has been earnestly pressed upon the Court, that the Ordinary in.the first instance, and the Superior Court on appeal, may interpret wills.  And this is the every day practice, where no objection is made, as it seems to expedite litigation. Strictly speaking, however, and with but a limited exception, the jurisdiction of the Ordinary is restricted to the *factum* of the execution of the will; as to emancipation clauses, it is made their duty, under the Statutes, to go further, and pronounce upon their validity, and to grant or refuse probate accordingly.

In all other cases, it is best to leave the rights arising out of wills to be contested in the proper Court, by the proper parties, who are more immediately interested.  It is conceded, that in a vast number of questions originating under wills, none but a Court of Chancery is competent to determine, because that Court alone, can grant full and adequate relief. Clothe the Courts of Ordinary with jurisdiction beyond the *factum* of execution, and where will you limit it?  What practically available line of demarkation can be drawn? This, to our mind, constitutes the most stubborn objection to the claim of power attempted in this case to be set up.  Was it ever contemplated, that the Court of Ordinary should sit in judgment upon the intricate doctrines involved in the 9th, 10th and 25th clauses of this Will ?   We think not.